Read, J.,
dissenting. I cannot concur’ in the opinion of the Court-just pronounced.
The charter itselif fully establishes the distinction between the power to “ license and regulate,” and the power to tax. Sec. 11 provides, that the city council shall have-power to license theatres, taverns, auctions and ferries, on the Ohio river ; and, .in granting the license; the city council:may “exact, demand and c receive such sum or sums of money as they shall think fit and c expedient.” Sec. 14 provides, that to defray the current expenses of. the city, the', city council shall have power to levy and collect taxes on the real and personal property therein, as ihe same has been, or shall be appraised and returned on the grand levy of the State. Sec. IB provides simply, that the city council shall have power to license and regulate all carts, wagons and drays, and- every description of two and four wheeled carriages, which may be kept in said city fo.r-hire. No power is given- in this section; a.s is given by the eleventh section, to exact “ such sum of money as they may deem fit and expedient.” The insertion of that power in section eleven, and the omission of it in section thirteen, is of itself sufficient to give ■ a construction to .the charter adverse to that claimed by the city council. I am of opinion that this construction is conclusive.
But. there are two'other objections to the decision of the Court, viz:
*647 First ':. That, independent of the aid derived from' a corn-; parison of the-'different sections of - the charter above quoted,- •' the power to “license and regulate” does'not embrace -a power-V ’to raise a'tax;- and, ' . . /
Second: If even the charter did propose to confer' that, power,• it would be unconstitutional and void, as an infringe-, ment of the right Of every citizen-to earn a livelihood'by honest; industry.' . . - :
I hold that the words to “ license and regulate,” in the city charter, do not confer the.power to impose a tax upon the owners of drays and other wheeled vehicles, or to raise a fund from such owners for general city purposes: . These words. barely confer a police power, and may authorize the city council. to-require such owners to register their names, and number -t-hjejf dray or other carriage, and to charge a reasonable fee for-such entry or registration, but nothing more.
The charge of three dollars upon draymen, imposed by the ordinance, is not in the nature of fees, but of revenue, to go into the treasury of the city for- general purposes.
It is a tax- upon émployment, and not upon property. ■ -The property — the dray and horse r--is assessed according :to its value, as other property, apart- from the three dollars imposed by this ordinance. But it is said that Bryson, in - this case;- is not resisting the payment of the three dollar tax, but the penalty adjudged for not complying with the- ordinance, requiring him-to take out his license as a drayman. That will not help the. case -; because, if thé city council had the-power to compel every drayman to take but a license, and to impose a penalty for violation of the ordinance requiring such license,- yet, if the city impose a condition precedent, to the grant of such license, which is illegal and void, and refuse, under the ordinance, to issue the license unless -such condition'be complied- with, the whole ordinance is void, and no penalty can be enforced -for its nonperformance. If the city ha.ve no authority :to require three dollars to be paid to obtain a license' to exercise-the 'employment of a.drayman or cartman, and refuse to' grant a licehse *648 unless such three dollars be paid, it would be absurd to say that a penalty could be imposed for the nonpayment of the three dollars and the not procuring a license. The city refuse to grant the license unless the sum of three dollars be first paid; and, if there be no authority to require the payment of three dollars, for a license, the coupling a power which they have, to wit, to license, with a power Which they have not, to wit, to charge three dollars as a condition precedent to such license, renders the whole ordinance a nullity, and also all other ordinances, or parts of the same ordinances, which impose a penalty for its violation.
This leaves the naked question, have' the city the power, under their charter, to impose a tax upon the employment of draymen, cartmen, &c. ?
If the city have the power, it must be derived under the charter. Did the Legislature intend, by the words to “ license and regulate,” to confer upon the city council the general power to tax the employment of draymen and cartmen ? Because, if the city have the power at all, it is a general power; for the amount of the tax is not limited by the charter, but left to the discretion of the city authorities. Hence, if they may impose a tax of three dollars, they may impose a tax of three hundred. But it is said that it is a power to impose a reasonable sum. Who shall judge of the reasonableness or unreasonableness of the sum imposed ? If the power exists at all,, it exists to be exercised at the discretion of the city council. If they exercise a discretion which they possess, who shall control it ? What is the limit? — what is the rule? Even could the exercise of this discretion be brought in review before the courts of the country, what would be the mode to determine whether the amount charged was too large ? Nothing but the discretion of the Court. So, at last, the matter, in some shape, would be left to discretion. And if three dollars might be charged, so might a larger or an indefinite sum. But the truth is, if the city council have the power to tax at discretion, the exercise of that discretion, on their part, is the end of the matter, and it is not *649 subject to review. The council, in such view, are the judges of their own discretion. It has been said, by high authority, that the power to tax implies the power to destroy'; and where the generál power to tax exists, as in the State, I know of no limit to its exercise, except the discretion and judgment of those who are to exercise it, and that it must be equal and operate upon all alike.
Did the Legislature intend, then, to confer any such power upon the city council ? We find that in all cases where the city is authorized to raise revenue, the charter imposes a limit to its exercise. The words to “ license and regulate,” do not expressly confer the power to tax, but such power, if it exist, is implied. Now the power to tax is not necessary to the exercise of the power to “ license and regulate,” and hence, upon the well settled doctrine of construing charters, should be denied. Nor can it be presumed that the Legislature have conferred a power not expressly conferred, or absolutely necessary to the exercise of such power so conferred. In certain cases the Courts of Common Pleas are authorized to grant licenses; suppose such power to license was conferred upon the Courts of Common Pleas, and the statute conferring such power fixed no sum to be paid for the grant of such license, would any man in his senses contend that the Court would have the right to fix such amount as it saw proper, to be paid as a condition precedent to the grant of such license ? The word “ license,” then, does not confer the power to tax, nor 'is the power to tax necessary to the exercise of the power to license. We must infer, then, that the Legislature intended merely to confer the power of police regulation, and not the power to tax or raise revenue.
But it is said, it is reasonable to impose this tax upon dray-men, cartmen, &c., because they wear out the streets. The suggestion is without force. The streets are not constructed or repaired out of the general funds of the city, but are a charge upon the owners of lots abutting upon such streets. Their property is only valuable in proportion as the streets are worn by use. Besides, the money raised by the tax imposed *650 upon the draymen, is not applied to the repair and preservation of the streets, but is paid into the city treasury to swell the general fund. It is made a source of general revenne.
It is suggested that the sum thus charged under this ordinance is to pay the expense of registration, &c., as fees. This is not only not true, but it is not even pretended by the city.
The truth is, it is a naked and barefaced effort to shift the burdens of the city expenses from property upon labor, and to levy a tax, not in proportion to the value of property owned, or' the moneyed ability to pay, but Upon employment. In this there is not a shadow of equity, because, if the streets are never cut by drays, it is this very business that gives value to property, and increases rents. Besides, it should not be the poor drayman who should be taxed for the wear of streets, but the wealth and commerce which he is the humble instrument of transporting.
I cannot believe that the Legislature intended to confer any such power, nor can it be inferred from any known rule of construction, but is in direct opposition to the well established rules applicable to the construction of charters, and, beyond all this, in the direct face of the constitution.
Hence, the Legislature would have no authority to confer the power claimed. If there is a power to license, in the sense ■claimed, there is a power to prohibit. The Legislature has no power to prohibit a man from exercising an honest employment. The right to labor is an inherent and natural, as well as constitutional right. The law has assigned an ownership to all that can aid man to live — to all that constitutes food or clothing. The only mode by which those born naked into the world can obtain support, by acquiring that which will preserve life, is by the consent of the legal holder, or through the provisions furnished to the destitute under the poor laws. Property seldom comes by gift; the poor obtain it by labor. The right to labor is coupled with the right of life, and is a necessary principle of self-preservation. Without labor, man would perish. It is the *651 only mode in which shelter, and raiment, and food can be obtained. Good v. Zerche, 12 Ohio Rep. 368.
The constitution has declared, that the right to acquire property is a natural, inherent and unalienable right.
Labor is the exercise of the right of acquisition. Hence, the Legislature has no right to tax or interrupt such right. To talk of granting a license to a man for the privilege of pursuing honest labor, is an insult to the age, and belongs to a period of despotic barbarism, and is fit only to be addressed to vassals and slaves. Every person, by natural right and under our constitution, has the right to .pursue honest labor without permission or license to do so from any source, except from that great and good God who gives him health and strength.
But the monstrous assumption has not only been asserted, claimed and exercised by the city to license the honest occupation of a drayman and cartman, and of the man who drives two and four wheeled vehicles, as a means of obtaining a subsistence, and to charge them a sum of money for the grant of such license, but the city is maintained in this constitutional outrage by the decision of this Court. It is not pretended that the man of wealth, who uses the streets for his pleasure, in his carriage, can be taxed for that privilege because he wears out the streets; but the- man whose necessities, for the support of himself, force him to pursue the occupations of a drayman or cartman, must buy the privilege, and pay a sum of money to be permitted to pursue such employment.
But, it is said, that in Boston excise laws have been supported. If such be the case there, no such laws exist or can exist in Ohio. There is no power in the Legislature to tax any honest. occupation, trade or industrial pursuit. If this were the case, any particular class of men could be utterly ruined by the majority imposing upon them the whole burdens of the State. Our constitutional mode of taxation is, to assess each man according to the property he owns. This is the only protection to each class. In this all find security, as a whole community will not be likely to ruin itself by taxation. But, if one class *652 of men may be taxed, it will be the interest of the majority to impose such tax, to escape themselves. If you may tax dray-men and cartmen, you may blacksmiths and carpenters, and so on until property shall be relieved from taxation, and the whole burden fall upon industry. The lawyers were the first to fall victims to this violation of principle. Now draymen, cartmen, &c.; and who next, is to be seen. We are yet a young State, and unless these outrages upon the constitution and natural right be resisted and checked, they will grow into precedent, which, in the end, will sap the foundations of our liberties and overthrow our free institutions.
It will be endeavored to withdraw this case from a tax upon employment. It cannot be done. It is nothing else. It is a charge upon the occupations of draymen, not as fees, but as revenue.
I hold, therefore, that the ordinance is a nullity, unconstitutional and void.